## No. 10,175.

### MARY L. DAVIES VS. CITY OF NEW ORLEANS.

It is the duty of the City Council, as soon as it is practicable, to adopt some plan for draining the *entire area* of the city of New Orleans, and keeping it free from rain, river and storm water; but the expense of such a system of drainage must be provided for by a local assessment imposed on the property drained.

It is also made the duty of the Council to maintain the cleanliness and health of the city, and to this end they are required to adopt some efficient mode of draining the streets, and of keeping them open and free from obstructions, and of keeping the canals clean and in good repair. But the expense of the same must be raised by *ad valorem* taxation.

One involves a question of local improvement and assessment, and the other of the exercise of the police power in the administration of city affairs.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor*, J.

### *W. S. Benedict* for Plaintiff and Appellant:

Where a public corporation ratifies the tortious acts of its agents, it will be liable therefor. McGary vs. Lafayette, 4 Ann. 440; McGary vs. Lafayette, 12 Rob. 668; 12 Ann. 15; 13 Ann. 426.

The right of eminent domain is limited to the actual necessities of the case. Wood's Field on Corporations, 2d edition, sec. 403.

A municipal corporation is responsible for the damage caused by the change of grade of streets, and for its work negligently and unskilfully done, to the injury of others. Dillon on Municipal Corporations, 3d edition, vol. 22, pp. 969, 970, secs. 968, 993, 1011, 1036.

A municipal corporation cannot by its acts rendering property useless, refuse to indemnify the owner, and yet tax the property as if of value. Same authorities.

### *Francis B. Lee*, Assistant City Attorney, for Defendant and Appellee:

1. Municipal corporations cannot be compelled by mandamus to establish throughout the corporate limits, nor in any part thereof, systems of street and sidewalk lighting and improvement, and drainage or sewerage; nor can they be held responsible in damages for failing to establish such systems. The inauguration of such enterprises is exclusively within the judicial or quasi-judicial or rather legislative discretion of the municipal authorities, and not subject to control. Dillon on Municipal Corporations, secs. 686, 1046, *et seq.*, and notes.

2. Municipal corporations are not responsible for the non-execution of their ordinances, unless there be in existence a statute declaring such liability, or unless there be a valid contract creating it. Dillon, sec. 950.

The opinion of the Court was delivered by

WATKINS, J.   Alleging herself to be the owner of several squares of ground situated in the sixth municipal district of the city of New Orleans, the plaintiff complains that same are annually assessed for taxes, notwithstanding they derive no corresponding benefits in the way of drainage, lights, police protection, sidewalks or bridges—all of which it is the duty of the defendant to furnish.

She represents that "some time since," the city caused a ditch to be dug at the distance of one square from the front of her property, which is at all times filled with water, which overflows its banks and floods her land, and renders it valueless for any purpose whatsoever.. She further avers that the work performed in the construction of said ditch was so carelessly and unskillfully done that the damage complained of was caused, and which she estimates at $3,000.

She prays judgment for damages, and for a decree directing the city to perform her duty in the premises, and "to make the proper bridges, open the necessary canals, and do such other work, in connection with said property, as, under the law and the facts presented may be proper."

The answer of defendant is a general denial, coupled with a plea of no cause of action.   There was a judgment in favor of the city and the plaintiff has appealed.

The facts appear to be as follows, to wit :

The plaintiff became the purchaser of the squares of ground mentioned, in July 1885, for the price of $415.50 and instituted this suit in the following December.   They are unimproved and unoccupied.   In 1884 they were assessed for the aggregate sum of $2400, and in 1885 for the sum of $2600; but no part of the taxes have been paid, by either plaintiff or her vendors.   They are situated between two contiguous and parallel streets, Delachaise and Amelia, which extend at right angles with Dryades street.   These squares lie, one in the rear of the other, No. 507 being in front, and fronting on St. Dennis street, it being just one square from Dryades street.   The ditch of which the plaintiff complains was constructed in the street last named, and extends from General Taylor street to Louisiana Avenue.   The evidence fails to disclose at what time this ditch was dug, or by whom the work was performed ; nor does it appear whether the work was skillfully or negligently performed.   There is an accumulation of water from which three or four of the squares, on the front end of the column of squares, are flooded at some times, and which are, at all times, rendered wholly unsuited for the purposes of building, improvement or occupancy.

This water, in much the greater part, flows through other canals from the ice-works into the Dryades street ditch, and the remainder is rain water.

It appears that if Delachaise and Amelia streets were ditched, and the ditches kept open and free from obstructions, there would be a free passage-way for the surplus of water into the Claiborne drainage canal.

There was introduced in evidence an ordinance of the City Council which directed the opening of ditches in those streets named, with the view of establishing a connection between Dryades street ditch and the Claiborne drainage canal. But it was adopted in 1884—nearly one year prior to plaintiff's purchase of the property—and it does not appear why same has not been enforced.

This evidence not only does not sustain plaintiff's demand for damages, but it clearly shows that she is not entitled to any.

The precise condition of things existing when she brought this suit, existed at the date of her acquisition of the property, and had, theretofore, existed for many years. It is perfectly obvious that, in its present condition, plaintiff's property requires neither banquettes, electric lighting, nor police protection. It may well be that these vacant squares of ground are in need of drainage and bridges, quite as much as they require dwellings and inhabitants, but it is not more the duty of the defendant to furnish the former, in the manner proposed, than it is the latter.

It may well be that the City Council should inaugurate some appropriate system of drainage, whereby those properties, and others similarly situated, might be reclaimed and made habitable.

The law provides that "it shall be the duty of the Council, as soon as practicable, to adopt a plan for the thorough draining and keeping dry, and free from river water, and the rapid carrying off of rain and storm water, for the entire area of the city of New Orleans; in adopting such plan of drainage, the Council shall impose a specific assessment for local improvements, not exceeding the increase in value of the property drained, occasioned by the drainage." Section 43 of Act 20 of 1882, which provides a charter for the city of New Orleans.

This power is altogether different from the one that is conferred by Sec. 7 of that act; i. e., "to maintain the *cleanliness and health* of the city, and to this end to adopt and provide an efficient system of drainage, * * * to open and keep open and free from obstructions all streets, * * * and to keep the street crossings, bridges and canals *clean* and in repair."

It is the former and not the latter power which the petitioner, inferentially, invokes. It is a question, purely and simply, of *drainage*, and not of police or of administration.

Its exercise must appertain to the *entire area* of the city, and necessarily involves the adoption of some plan for the draining of rain, river and storm water. This is in the nature of a local improvement, and the expense must be borne by the property drained; and it must be apportioned by a specific assessment, which shall not exceed in amount the increase in value given to the property. 2 Dillon Munic. Corp., sec. 596; 38 Ann. 326, Charnock vs. Levee Company.

The means must be provided by taxation to enable the city authorities " to maintain the *cleanliness and health* of the city;" and to do this, they are required to keep the streets free from obstructions, and the canals *clean* and in repair.

It is perfectly clear to our minds that the plaintiff's pretensions are groundless. She has evidently sought the aid of the courts with the expectation of making a successful venture of a speculation, and has failed.

Judgment affirmed. ·